## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND


| | | |
|---|---|---|
| | : | |
| UNWIRED SOLUTIONS, INC. | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-16-0405 |
| | : | |
| | : | |
| OHIO SECURITY INSURANCE CO. | : | |
| | : | |
| | : | |


## MEMORANDUM

Now pending in this case are two motions, both arising in the context of a dispute
between Unwired Solutions, Inc., dba Linq Services, Inc. ("Linq") and Ohio Security Insurance
Company ("Ohio Security"). That dispute centers on whether Ohio Security must defend Linq in
an underlying lawsuit, *Sprint Solutions, Inc., et al. v. Unwired Solutions, Inc, et al.*[1] Linq seeks
declaratory judgment that Ohio Security has such a duty to defend.

After Linq filed its declaratory judgment action, Ohio Security answered and
counterclaimed that it had no duty to defend or indemnify. In that filing, Ohio Casualty
Insurance Company ("Ohio Casualty"), which issued umbrella-level policies to Linq, also sought
declaratory judgment that it had no duty to defend or indemnify Linq in the *Sprint* action. Linq
then moved to dismiss the counterclaims for declaratory judgment filed by Ohio Security but not
those filed by Ohio Casualty.  Linq also moved for partial summary judgment on its claim that
Ohio Security had a duty to defend. Ohio Security and Ohio Casualty moved to stay summary

---

[1] United States District Court, District of Maryland, Case No. 1:15-cv-02964-GLR ("*Sprint* action").

1

judgment briefing, arguing that they need an opportunity to conduct discovery before responding to Linq's motion.

No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the motion to dismiss counterclaims will be granted in part and denied in part, and the motion to stay summary judgment briefing will be denied.

## BACKGROUND

On September 30, 2015, Sprint Solutions, Inc. and Sprint Communications Company ("Sprint") filed a complaint for damages and injunctive relief against Linq and various individuals asserted to be Linq agents. (Linq Compl. Ex. 2, Sprint Compl. ¶¶ 12–18, ECF No. 1-2). Sprint alleges that Linq and its agents perpetrated a "Bulk Handset Trafficking Scheme," (*id.* ¶ 2), that took advantage of the fact that Sprint sells phones to its customers for use on the Sprint network at subsidized rates, (*id.* ¶ 25). Sprint alleges that Linq, which provides services to Sprint customers, gained control of Sprint customer accounts in order to acquire subsidized Sprint phones for itself and sell them at a profit. (*Id.* ¶¶ 43–44). According to Sprint, Linq is thus liable for, *inter alia*, unfair competition, tortious interference with contract, civil conspiracy, and federal trademark infringement.[2] (*Id.* ¶¶ 69–214).

According to Linq, Ohio Security has a duty to defend it in the *Sprint* action in light of three commercial general liability policies that Ohio Security issued to Linq. (Linq Compl. ¶¶ 10–11, 93–95, ECF No. 1). Collectively, these policies cover the period from September 21, 2013, to September 21, 2016, and outline duties to defend and indemnify in identical language.

---

[2] The 14 counts are unfair competition; tortious interference with business relationships and prospective advantage; tortious interference with contract; civil conspiracy; unjust enrichment; conspiracy to induce breach of contract; common law fraud and fraudulent misrepresentation; trafficking in computer passwords; unauthorized access; unauthorized access with intent to defraud; federal trademark infringement; federal common law trademark infringement and false advertising; contributory trademark infringement; and conversion.

(Def. Answer & Countercls. Exs. 4–6, ECF Nos. 11-4, 11-5, 11-6). Specifically, they provide that Ohio Security "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . personal and advertising injury to which this insurance applies." The policies clarify that "personal and advertising injury" includes injury "arising out of" "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." They also state that Ohio Security "will have the right and duty to defend the insured against any such 'suit' seeking those damages." (Def. Answer & Countercls. Ex. 4, 57, 73).

Linq claims the *Sprint* action triggers Ohio Security's duty to defend, partly because Sprint alleges Linq's actions harmed its reputation and brand, (Linq Compl. ¶ 24; Sprint Compl. ¶¶ 58–63), and "[e]xpress publication of statements that disparage [Sprint] can be reasonably inferred from Sprint's factual allegations," (Linq Compl. ¶ 29). Linq also claims that no policy exclusions apply to bar coverage. (*Id.* ¶¶ 49–89). Ohio Security, by contrast, claims it has no duty to defend or indemnify because Sprint alleges no conduct falling within the coverage grant of the policies. The *Sprint* complaint, it argues, "does not allege that Linq published any material that disparaged Sprint's goods, products or services, which is what the Policies actually require for coverage to be triggered." (Def. Answer & Countercls. 2, ECF No. 11). And even if the *Sprint* action might otherwise be covered, Ohio Security maintains, one or more exclusions to coverage would apply, and coverage also would be barred because Linq knew "it would likely be sued by Sprint when it purchased the policies." (*Id.*).

In addition to the "primary-level" policies from Ohio Security, Linq also obtained "umbrella-level" policies from Ohio Casualty. (Def. Answer & Countercls. Exs. 7–9, ECF Nos.

11-7, 11-8, 11-9). The parties agree the umbrella policies were in effect for the same policy periods as the primary-level insurance and provide coverage for "personal and advertising injury" to the same extent. (*See* Def. Answer & Countercls. 44; Reply, Mot. to Dismiss Countercls. 1, ECF No. 27). The umbrella-level policies issued become relevant upon exhaustion of the associated primary-level policy. (*See* Resp. in Opp'n to Mot. to Dismiss Countercls. 2, ECF No. 25).[3]

On February 12, 2016, Linq filed its complaint in this case against Ohio Security, seeking a declaration that Ohio Security has a duty to defend Linq in the *Sprint* action. (Linq Compl.). In its answer, dated March 23, 2016, Ohio Security claimed it has no such duty and asserted affirmative defenses. (Def. Answer & Countercls. 2, 32). In that same filing, Ohio Security and Ohio Casualty also counterclaimed, seeking declaratory judgment that neither Ohio Security nor Ohio Casualty has a duty to defend or indemnify Linq. (*Id.* 34). That prompted Linq to file a motion to dismiss Ohio Security's counterclaims or, in the alternative, sever and/or stay any remaining counterclaim regarding the duty to indemnify. (Mot. to Dismiss Countercls. 1, ECF No. 22). Linq did not move to dismiss the counterclaims by Ohio Casualty. Ohio Security and Ohio Casualty responded to the motion to dismiss, and Linq replied.

On March 23, 2016 – the same day Ohio Security filed its answer and affirmative defenses and the same day Ohio Security and Ohio Casualty filed their counterclaims – Linq moved for partial summary judgment on its claim that Ohio Security has a duty to defend. (Mot. Partial Summ. J., ECF No. 16). Ohio Security and Ohio Casualty then moved to stay summary judgment briefing, stressing their need for discovery in order to oppose the summary judgment motion. (Mot. Stay Summ. J. Br., ECF No. 19). Linq responded, (Resp. in Opp'n to Mot. Stay

---

[3] An umbrella-level policy "covers occurrences covered by the primary policy but exceeding the liability limits of the primary policy." *Megonnell v. United States Auto. Ass'n*, 368 Md. 633, 644 n.6 (2002).

Summ. J. Br., ECF No. 23), and Ohio Security and Ohio Casualty replied, (Reply, Mot. Stay

Summ. J. Br., ECF No. 26). Although the deadline for opposing summary judgment was April 6,

2016, the court advised the parties that the defendant would receive a reasonable extension once

the motion for stay had been fully briefed and decided. (Order, Docket Entry No. 21).

With that background, the court will first address Linq's motion to dismiss Ohio

Security's counterclaims, and then the court will address the motion by Ohio Security and Ohio

Casualty to stay summary judgment briefing.

## LEGAL STANDARD

As a federal court exercising diversity jurisdiction, this court applies the substantive law

of the forum state, including its choice-of-law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*,

507 F.3d 270, 275 (4th Cir. 2007). If an insurance policy contains no choice-of-law provision,

Maryland applies the doctrine of *lex loci contractus*, under which "the law of the jurisdiction

where the contract was made controls its validity and construction." *Konover Property Trust,*

*Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490 (2002). "For choice-of-law purposes, a

contract is made where the last act necessary to make the contract binding occurs." *Id.* An

insurance policy typically is made in the state in which the policy is delivered and the premiums

are paid. *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672–73 (1997).

Here, the parties agree that Ohio Security sold and issued insurance policies to Linq in

Maryland and that Maryland law thus governs this case. (*See* Linq Compl. ¶ 9; Def. Answer &

Countercls. 4; Resp. in Opp'n to Mot. to Dismiss Countercls. 3–9).

## ANALYSIS

A. *Motion to Dismiss Counterclaims*

5

In its counterclaims, Ohio Security[4] seeks a declaration it has neither a duty to defend nor a duty to indemnify Linq in the underlying *Sprint* action. In its first counterclaim, Ohio Security claims no duty to defend or indemnify based on the plain language of the insurance policies and the facts alleged in the underlying action. In its second, Ohio Security claims no duty to defend or indemnify based on the known loss and fortuity doctrines. (Def. Answer & Countercls. 47–48). In its motion to dismiss these counterclaims, Linq contends that the first counterclaim is duplicative with respect to the duty to defend and premature with respect to the duty to indemnify. It also claims the known loss and fortuity doctrines raised in the second counterclaim are affirmative defenses that cannot form the basis of a counterclaim and, in any event, that the two doctrines have no application here. (Mot. to Dismiss Countercls. Mem. Law 5–9, ECF No. 22-1; Reply, Mot. to Dismiss Countercls. 7–21).

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a

---

[4] Ohio Security and Ohio Casualty jointly filed this request for declaratory relief. Because Linq has not moved to dismiss the claims brought by Ohio Casualty, the court rules on the motion to dismiss with respect to Ohio Security only.

motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

*Duty to Defend & Plain Language*

Linq first moves to dismiss the counterclaim by Ohio Security that Ohio Security has no duty to defend based on the plain language of the policies.[5] In their joint response, Ohio Security and Ohio Casualty stress that their counterclaims overall are distinguishable from Linq's initial request for declaratory judgment because Ohio Security also seeks a declaration on duty to indemnify and Ohio Casualty seeks declarations on its duties to defend and indemnify. (Resp. in Opp'n to Mot. to Dismiss Countercls. 4).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). A

---

[5] Linq appears to ask the court to either dismiss this counterclaim or, alternatively, strike it pursuant to Fed. R. Civ. P. 12(f). (*See* Mot. to Dismiss Countercls. Mem. Law 5–6). Rule 12(f) provides that a district court may "strike from the pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Because the court will grant the motion to dismiss, it need not rule on the motion to strike.

federal court may properly exercise jurisdiction where three criteria are met: "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotations omitted).

In the exercise of its "broad discretion," *S.C. Dept. of Health & Envtl. Control v. Commerce & Indus. Ins. Co.*, 372 F.3d 245, 260 (4th Cir. 2004), a federal court may decline to exercise its jurisdiction and dismiss the action, *Volvo Constr. Equip.*, 386 F.3d at 594. A court "should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotations omitted). But a court may decline to hear counterclaims that duplicate issues already before the court. *See Malibu Media, LLC v. Doe 1*, 2012 WL 6681990, at *3 (D. Md. Dec. 21, 2012)[6] ("Courts have typically declined to consider counterclaims for declaratory relief that are duplicative of affirmative defenses."); *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (dismissing counterclaim seeking declaratory judgment because it was "essentially identical" to plaintiff's complaint "except that it seeks the opposite effect").

Ohio Security's counterclaim that it has no duty to defend in the *Sprint* action based on the plain language of the policies plainly duplicates Linq's initial request for declaratory

---

[6] Unpublished cases are cited not for any precedential value but for the soundness of their reasoning.

judgment on that same issue. Moreover, Ohio Security fails to explain why retaining this counterclaim on the duty to defend will help clarify legal relations at issue or afford relief from the "uncertainty, insecurity, and controversy giving rise to the proceeding."

Accordingly, the court will grant Linq's motion to dismiss Ohio Security's counterclaim seeking a declaration that Ohio Security has no duty to defend in the *Sprint* action based on the plain language of the insurance policies at issue here.

*Duty to Indemnify & Plain Language*

Linq also moves to dismiss Ohio Security's counterclaim seeking declaratory judgment on Ohio Security's duty to indemnify based on the plain language of the policies. This motion will be denied, for several reasons.

The duty to indemnify "refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim." *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 257–58 (4th Cir. 2006). The duty to indemnify depends on liability, *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004), and whether an insurer must indemnify generally "turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage." *USAA Cas. Ins. Co. v. Mummert,* 213 F. Supp. 2d 538, 541 (D. Md. 2002).

Whether declaratory judgment on the duty to indemnify is appropriate depends on the issues involved. In particular, declaratory judgment may be appropriate for questions that are "independent and separable" from claims asserted by an injured third party in an underlying suit, *see Allstate Ins. Co. v. Atwood*, 319 Md. 247, 252 (1990) (quoting *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 405 (1975)), but declaratory judgment is generally inappropriate for questions

9

to be decided in the underlying lawsuit, *see id.* at 253–255. Several types of questions may be "independent and separable," including "question[s] of coverage or defenses under the language or requirements of the insurance policy" that are "separate and distinct from the issues involved" in the underlying lawsuit, *see St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 194 (1981); *accord Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 234–35 (1997), and factual disputes unlikely to arise in the underlying suit, *see Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 147–49 (1995). Determining whether a duty to indemnify exists at declaratory judgment may "avoid unnecessary expense and delay to the parties," *see Brohawn*, 276 Md. at 405, but it is also within a court's discretion to defer resolving even those questions that are "independent and separable" until trial, *see Chantel*, 338 Md. at 149.

According to Linq, a determination of Ohio Security's duty to indemnify at declaratory judgment is inappropriate, for three reasons. First, Linq claims it is premature because liability has not been determined in the *Sprint* action. (Mot. to Dismiss Countercls. Mem. Law 6–7). This argument fails because it implies declaratory judgment is never appropriate before liability is determined, which is not true in Maryland. *See Chantel*, 338 Md. at 149.

Second, Linq claims declaratory judgment is inappropriate because a duty to indemnify may exist even absent a duty to defend. (Reply, Mot. to Dismiss Countercls. 8–10). As a general rule, that does not appear to be true in Maryland. *See Litz*, 346 Md. at 225 ("[T]he mere possibility that the insurer will have to indemnify triggers the duty to defend."); *Perdue Farms*, 448 F.3d at 257 (duty to defend is "broader" than duty to indemnify). But even if the duty to indemnify may exist absent a duty to defend in certain cases,[7] it does not follow, as Linq appears

---

[7] Linq suggests that a duty to indemnify may exist absent a duty to defend in at least two scenarios. First, it claims that, because the theory of recovery is not fixed until the case ends, a duty to indemnify might be triggered based on new theories propounded after a court determines there is no duty to defend. (Reply, Mot. to Dismiss Countercls. 8–

to argue, that declaratory judgment on the duty to indemnify is never appropriate. As discussed,

Maryland law encourages declaratory judgment in certain circumstances.

Finally, Linq suggests that even if declaratory judgment on a duty to indemnify were

appropriate in some cases, it is inappropriate here because declaratory judgment would relate to

issues to be litigated in the underlying *Sprint* action. (*See* Mot. to Dismiss Countercls. Mem. Law

7). Whether claims in the *Sprint* action could result in liability for "personal and advertising

injury" as defined in the insurance policies is plausibly an "independent and separable" issue.

The *Sprint* action will not examine whether Linq caused Sprint "personal and advertising injury"

– that term is relevant only in the context of the insurance policies, not the underlying lawsuit.

The *Sprint* action is also unlikely to focus on key facts at issue here, including whether Sprint's

alleged injuries arose from an "oral or written publication" by Linq that "disparages" Sprint; in

light of Sprint's claims, there is no apparent need to establish these facts. *See Chantel*, 338 Md.

at 147 (declaratory judgment on duty to indemnify appropriate where there was no reason for

plaintiffs in underlying lawsuit to present evidence on key fact needed to establish duty to

indemnify).

Accordingly, the court will deny the motion to dismiss Ohio Security's counterclaim on

the duty to indemnify based on the plain language of the policies.

### Known Loss and Fortuity Doctrines

In its counterclaims, Ohio Security also seeks a declaration that it has no duty to defend

or indemnify "because Linq knew when it procured the Policies that it was substantially probable

---

9). Second, it suggests an insured may prove facts at trial establishing a duty to indemnify even if those same facts were not sufficiently pleaded earlier on and thus had not triggered a duty to defend. (*See id.*) (discussing *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589 (5th Cir. 2011)). By contrast, Linq appears to concede an insurer "need not indemnify on allegations found insufficient to activate a duty to defend." (*See id.* at 9) (quoting *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995)). *See also Westfield Ins. Co. v. Nautilus Ins. Co.*, 154 F. Supp. 3d 259, 271–72 (M.D.N.C. 2016) (noting that "the duty to defend does not subsume the duty to indemnify").

that it would be sued by Sprint . . . and did not disclose that information."[8] (Def. Answer &

Countercls. 34, 48). According to Ohio Security, it thus has no duty to defend or indemnify

under the known loss and fortuity doctrines. (*Id.*). Linq moves to dismiss this second

counterclaim, for two reasons. First, these doctrines are affirmative defenses that do not create

the basis for a separate counterclaim. (Mot. to Dismiss Countercls. Mem. Law 5, 8). Second,

these doctrines fail as a matter of law, Linq claims. (*Id.* 8; Reply, Mot. to Dismiss Countercls.

10–16, 19).

The known loss and fortuity doctrines[9] are common-law affirmative defenses. *See*

*Stonehenge Eng'g Corp. v. Employers Ins. of Wausau*, 201 F.3d 296, 301 (4th Cir. 2000); *Mayor*

*& City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md. App. 256, 306 & n.49 (2002)

(discussing the "defense of known loss" and describing known loss doctrine as a "variant" of the

fortuity doctrine); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Companies, Inc.*, 265

F.3d 97, 108 n.2 (2d Cir. 2001) (discussing "fortuity and known loss defenses").[10] Under the

fortuity doctrine, insurance is not available for losses the policyholder "knows of, planned,

intended, or is aware are substantially certain to occur," and under the known loss doctrine, an

insured "may not obtain insurance to cover a loss that is known before the policy takes effect."

*Utica Mutual*, 145 Md. App. at 306 n.49; *accord Stonehenge*, 201 F.3d at 301–02 (applying

South Carolina law and predicting how doctrines would apply in that state in light of complete

absence of South Carolina case law applying them).

---

[8] According to Ohio Security, Linq knew it was likely to be sued because Wireless Buybacks, LLC, which Ohio Security describes as Linq's "sister" company, had already been sued by Sprint. (Def. Answer & Countercls. 33).
[9] Although Ohio Security and Ohio Casualty refer to the "known loss" and "fortuity" doctrines separately, they note that some courts refer to them collectively as the "known loss" doctrine. (Resp. in Opp'n to Mot. to Dismiss Countercls 6 n.1). For clarity, this decision refers to them separately.
[10] Ohio Security and Ohio Casualty appear to recognize these doctrines are defenses. Ohio Security lists them as affirmative defenses in its answer, (Def. Answer & Countercls. 32), and Ohio Security and Ohio Casualty describe the doctrines as constituting "a complete defense to Linq's Complaint," (Resp. in Opp'n to Mot. to Dismiss Countercls. 3).

With respect to underlying lawsuits against an insured, the relevant "loss" that may trigger application of these doctrines is legal liability – not the loss the third party in the underlying suit allegedly suffered. *See Maryland Cas. Co. v. Hanson*, 169 Md. App. 484, 521–22 (2006) (to trigger doctrines, insurer must show "purported knowledge of injury and loss . . . for each injury as averred by [plaintiffs]" in the underlying lawsuit); *Stonehenge*, 201 F.3d at 302–03 (filing of lawsuit against insured alone "does not trigger application of the known loss doctrine"). For these doctrines to bar coverage, the insured must know, before obtaining coverage, "that entry of a judgment against it [in the underlying lawsuit] was substantially certain to occur." *See Stonehenge*, 201 F.3d at 303. If liability has not been established in the underlying suit, these doctrines do not apply if the insured can mount a credible defense such that liability may not be presumed. *See id.* (doctrines do not apply where insured has "sufficiently viable defenses" in the underlying lawsuit); *see also In re Wallace & Gale Co.*, 275 B.R. 223, 245–46 (D. Md. 2002) (known loss doctrine does not apply if "there is any uncertainty about the insured's liability for a specific claim and where no legal obligation to pay has been imposed upon the insured prior to the issuance of the policy").

Based on the foregoing, the potential application of the known loss and fortuity doctrines is not plausible here. No liability has been determined in the underlying *Sprint* action. Indeed, Ohio Security and Ohio Casualty offer no explanation for why, as of today, Linq is likely to be found liable in the *Sprint* action – let alone that Linq knew of such likely liability years ago, before buying insurance. That ends the matter. Ohio Security and Ohio Casualty cannot survive the motion to dismiss simply by alleging that Linq knew, before obtaining coverage, that it was substantially probable that it would be sued by Sprint. (Resp. in Opp'n to Mot. to Dismiss

Countercls. 8). That is the wrong standard, and because the two insurers only allege that Linq

knew it would be sued in advance, the application of the doctrines here is sheer speculation.[11]

Admittedly, scant precedent exists on how the known loss and fortuity doctrines apply in

Maryland. In *Hanson* and *Utica Mutual*, the Court of Special Appeals provided only general

outlines of these two doctrines. But the indications from those decisions are consistent with the

Fourth Circuit's decision in *Stonehenge*, which detailed the doctrines in their "most commonly

articulated form" in order to predict how they would apply in a state (there, South Carolina) that

lacked case law in this area. 201 F.3d at 302. In light of the scant precedent on these doctrines in

Maryland, this court is guided by the Fourth Circuit's interpretation, under which the doctrines

do not apply simply because the insured knew it might face legal action before obtaining

coverage.

Because the known loss and fortuity doctrines are inapplicable as a matter of law, the

motion to dismiss as to these parts of the counterclaims will be granted.[12]

*Motion to Sever and/or Stay Counterclaims on Duty to Indemnify*

If Ohio Security's counterclaims on the duty to indemnify are not all dismissed, Linq

alternatively asks this court to sever and/or stay any remaining counterclaim on this issue. (Mot.

---

[11] In opposition, Ohio Security relies on *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90 (1992), which the Court of Special Appeals of Maryland cited approvingly in both *Hanson* and *Utica Mutual*. In *Outboard Marine*, the Illinois Supreme Court found the known loss doctrine applied where an insured obtained coverage after receiving an order from the Environmental Protection Agency stating the insured's chemical discharges "present[] an imminent and substantial danger" to human health and welfare and threaten the livelihood of persons using Lake Michigan. 154 Ill.2d at 104–106. But even *Outboard Marine* does not stand for the proposition – asserted by Ohio Security – that these doctrines "require only that Linq have known that a lawsuit by Sprint was substantially probable to occur." (Resp. in Opp'n to Mot. to Dismiss Countercls. 8). *See Outboard Marine*, 154 Ill.2d at 107 (known loss triggered if insured knew or had reason to know "there was a substantial probability that loss or liability would ensue").

[12] Ohio Security also claims this court should convert Linq's motion to dismiss into a motion for summary judgment because Linq, when explaining why the known loss and fortuity doctrines do not apply, allegedly relied on matters outside the proceedings. And if the motion were so converted, Ohio Security claims it is entitled to discovery. (Resp. in Opp'n to Mot. to Dismiss Countercls. 10–11). Because this court will grant Linq's motion to dismiss counterclaims based on the known loss and fortuity doctrines, without relying on matters outside the proceedings, it need not address this issue.

to Dismiss Countercls. Mem. Law 9). It is within this court's discretion to defer the indemnity

issue until after trial in the underlying action – even if the issue is "independent and separable."

*See Chantel*, 338 Md. at 149; *see also Vigilant Ins. Co. v. Luppino*, 352 Md. 481, 494 (1999)

("[E]ven when declaratory judgment actions to determine coverage are permitted before a trial of

the underlying tort action, they are not favored."). Because the duty to indemnify "[g]enerally . . .

turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the

policy coverage," *Mummert*, 213 F. Supp. 2d at 541, and because the underlying action here is

still ongoing, this court will grant Linq's request to stay Ohio Security's counterclaim regarding

the duty to indemnify based on the plain language of the policies until after liability is settled.


B. *Motion to Stay Summary Judgment Briefing*

On March 23, 2016, Linq moved for partial summary judgment, seeking a declaration

that Ohio Security had a duty to defend in the *Sprint* action. (Mot. Partial Summ. J.). Ohio

Security and Ohio Casualty then moved to stay summary judgment briefing, contending they

needed an opportunity for discovery in light of their claims related to the known loss and fortuity

doctrines. (Mot. Stay Summ. J. Br. Mem. Law 2–3, ECF No. 20).

The Fourth Circuit has instructed courts to refuse summary judgment pursuant to Fed. R.

Civ. P. 56(d) "where the nonmoving party has not had the opportunity to discover information

that is essential to his opposition." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995)

(quoting *Anderson*, 477 U.S. at 250 n.5).[13] Information related to the known loss and fortuity

doctrines is not "essential" to the opposition here because these doctrines do not apply. Because

discovery of facts related to these doctrines is not relevant or necessary to resolve the present

controversy, the court will deny the motion to further stay summary judgment briefing. *See Ingle*

---

[13] In *Nguyen*, the Fourth Circuit addressed Fed. R. Civ. P. 56(f), the predecessor to the current Rule 56(d).

*ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) ("Rule 56(f) motions may be denied . . . if the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.") (internal quotations omitted).[14] Ohio Security and Ohio Casualty will be given a reasonable period of time in which to file their response.[15]

C. *Judicial Notice*

In support of its opposition to the motion to stay summary judgment briefing, Linq requests that the court take judicial notice of three legal articles; two petitions for rehearing, one motion for reconsideration, and one reply from other legal actions; email correspondence; and printed pages from two websites. (Resp. in Opp'n to Mot. Stay Summ. J. Br. Ex. 2, ECF No. 23-2). This request will be denied.

As a general rule, the Federal Rules of Evidence govern in diversity cases. *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 109–10 (4th Cir. 1995). The Federal Rules distinguish between adjudicative and legislative facts. *See* Fed. R. Evid. 201(a). Adjudicative facts are "the facts of the particular case," whereas legislative facts "are those which have relevance to legal reasoning and the lawmaking process." Fed. R. Evid. 201(a) advisory committee's note. A federal court must notice an adjudicative fact "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). That said, an adjudicative fact may only be noticed if it is indisputable, *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir.

---

[14] The court further notes that any evidence unearthed during discovery by Ohio Security with respect to the known loss and fortuity doctrines would likely not be relevant when determining whether Ohio Security has a duty to defend. Such discovery would constitute "extrinsic" evidence, which an insurer generally may not use to contest whether a duty to defend exists. *See Aetna Cas. & Surety Co. v. Cochran*, 337 Md. 98, 107–08 (1995).

[15] The court today has issued an opinion in a related case, 1:16-cv-0328-CCB, which may affect the outcome of Linq's motion.

2004), meaning it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned," Fed. R. Evid. 201(b). Moreover, adjudicative facts must, by definition, be relevant. *United States v. LaRouche*, 4 F.3d 987, *4 (4th Cir. 1993) (unpublished opinion).

In light of the foregoing, Linq's request for judicial notice of these documents will be denied. The three articles are not adjudicative facts – they are legal analysis. With respect to the four legal submissions from other cases, the arguments contained therein are not adjudicative facts, and Linq fails to explain how the mere existence of these filings is relevant here. Likewise, neither the copies of the websites nor the proffered email correspondence are relevant to the motion to stay summary judgment briefing.

## CONCLUSION

In summary, this court will grant Linq's motion to dismiss Ohio Security's counterclaim that Ohio Security has no duty to defend in the *Sprint* action under the plain language of the policies. It will deny Linq's motion to dismiss Ohio Security's counterclaim that Ohio Security has no duty to indemnify based on the plain language of the relevant insurance policies, although it will grant Linq's alternative request to stay this counterclaim. The court will also grant Linq's request to dismiss Ohio Security's counterclaim that it has no duty to defend or indemnify in light of the known loss and fortuity doctrines. The court will deny the request from Ohio Security and Ohio Casualty to stay summary judgment briefing. Finally, it will deny Linq's request for judicial notice. A separate order follows.

12/8/16                                                    /S/
Date                                                     Catherine C. Blake
                                                         United States District Judge

17