**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNWIRED SOLUTIONS, INC.    :
             :
             :
  v.           :
             :   Civil No. CCB-16-0405
             :
OHIO SECURITY INSURANCE CO.  :
             :
             :

## MEMORANDUM

   Now pending are cross motions for summary judgment arising in the context of a dispute between Unwired Solutions, Inc., dba Linq Services, Inc. ("Linq") and Ohio Security Insurance Company ("Ohio Security"). That dispute centers on whether Ohio Security must defend Linq in an underlying lawsuit, *Sprint Solutions, Inc., et al. v. Unwired Solutions, Inc., et al.*[1] Linq has moved for partial summary judgment on the issue of whether Ohio Security has a duty to defend Linq in the *Sprint* action. Ohio Security and Ohio Casualty Insurance Company ("Ohio Casualty") have cross moved for summary judgment, asking the court to find that neither Ohio Security nor Ohio Casualty has a duty to defend in the *Sprint* action. Ohio Security and Ohio Casualty (together, "Liberty Mutual") also ask this court to find that neither has a duty to indemnify in the *Sprint* action. No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the court will deny Linq's motion for summary judgment and grant Ohio Security and Ohio Casualty's motion for summary judgment on the duty to defend issue. The court will dismiss without prejudice claims related to the duty to indemnify.

---

[1] United States District Court, District of Maryland, Case No. 1:15-cv-2964-GLR ("*Sprint* action").

## BACKGROUND

The court assumes familiarity with the factual background of this case. In brief, Sprint
Solutions, Inc. and Sprint Communications Company ("Sprint") filed a complaint for damages
and injunctive relief against Linq and individuals asserted to be Linq agents on September 30,
2015. (Linq Mot. Partial Summ. J. Ex. 2, Sprint Compl. ¶¶ 12–18, ECF No. 16-10). Sprint
alleges that Linq and its agents perpetrated a "Bulk Handset Trafficking Scheme," (*id.* ¶ 2), that
took advantage of the fact that Sprint sells phones to its customers for use on the Sprint network
at subsidized rates, (*id.* ¶ 25). Sprint alleges that Linq, which provides services to Sprint
customers, gained control of Sprint customer accounts in order to acquire subsidized Sprint
phones for itself and sell them at a profit. (*Id.* ¶¶ 43–44). Linq is liable for, *inter alia*, tortious
interference with contract and federal trademark infringement, Sprint claims. (*Id.* ¶¶ 69–214).

Linq and Ohio Security dispute whether Ohio Security has a duty to defend Linq in the
underlying *Sprint* action. This disagreement centers on three insurance policies that Ohio
Security issued to Linq, which were in effect from September 21, 2013, to September 21, 2016.
(Liberty Mutual Cross Mot. Summ. J. Mem. Law Exs. 2–4, ECF Nos. 32-3, 32-4, 32-5). Those
policies outline a duty to defend and indemnify in identical language and provide that Ohio
Security "will pay those sums that the insured becomes legally obligated to pay as damages
because of . . . personal and advertising injury to which this insurance applies." The policies
clarify that "personal and advertising injury" includes injury "arising out of" "oral or written
publication, in any manner, of material that slanders or libels a person or organization or
disparages a person's or organization's goods, products, or services." They also state that Ohio
Security "will have the right and duty to defend the insured against any such 'suit' seeking those

damages." (*See, e.g.*, Linq Mot. Partial Summ. J. Ex. 1, 42, 58, ECF No. 16-9). In addition to the "primary-level" policies from Ohio Security, Linq obtained three "umbrella-level" policies from Ohio Casualty. (Liberty Mutual Cross Mot. Summ. J. Mem. Law Exs. 5–7, ECF Nos. 32-6, 32-7, 32-8). The umbrella policies were in effect for the same policy periods as the primary-level policies and provided coverage for "personal and advertising injury" to the same extent.

On February 12, 2016, Linq filed a complaint against Ohio Security, seeking a declaration that Ohio Security has a duty to defend Linq in the *Sprint* action. (Linq Compl., ECF No. 1). On March 23, 2016, Linq moved for partial summary judgment on its claim that Ohio Security has a duty to defend. (Linq Mot. Partial Summ. J., ECF No. 16). Ohio Security and Ohio Casualty filed a cross motion for summary judgment on the duty to defend issue (which also served as their response to Linq's motion for partial summary judgment) on January 6, 2017. (Liberty Mutual Cross Mot. Summ. J., ECF No. 31). That cross motion also requested that the court enter a final declaratory judgment that neither Ohio Security nor Ohio Casualty has a duty to defend or indemnify Linq in the *Sprint* action. (Liberty Mutual Cross Mot. Summ. J. Mem. Law 8, ECF No. 32). Linq filed a consolidated response and reply on January 20, 2017. (Linq Resp. in Opp'n & Reply, ECF No. 33). Liberty Mutual filed a reply in support of its cross motion for summary judgment on February 3, 2017. (Liberty Mutual Reply, ECF No. 34).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party*

*of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

A. *Cross Motions for Partial Summary Judgment*

The cross motions for partial summary judgment raise issues similar to those already decided by this court when facing cross motions for partial summary judgment in another case, *Wireless Buybacks, LLC v. Hanover American Ins. Co.*, 1:16-cv-0328-CCB. As explained in that case, the first issue is whether the underlying complaint in the *Sprint* action may trigger a duty to defend even though Sprint did not specifically identify the tort of product disparagement as a cause of action. In Maryland, whether a duty to defend exists depends on both the alleged facts and the causes of action contained in the underlying complaint; the inquiry focuses on substance, not labels. Here, as in *Wireless Buybacks*, the relevant inquiry is whether the underlying lawsuit

alleges or implies that Sprint suffered an injury that arose out of the publication of disparaging material by Linq – regardless of how Sprint labeled its counts. *See Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 18 (2004); *see also Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 641 (1996) (duty to defend exists if underlying complaint "alleges action" that is potentially covered); *All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F. Supp. 3d 409, 420 (D. Md. 2014) (courts must look beyond headings for the counts alleged in the underlying suit to determine whether a duty to defend exists). Accordingly, the court will proceed with its examination of the insurance policies and the substance of the underlying claims to determine whether those claims allege that Linq published material that disparaged Sprint's "goods, products or services."

In Maryland, an insurance company has a duty to defend its insured "for all claims that are potentially covered under the policy." *Walk*, 382 Md. at 15. That is, "[e]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408 (1975). When determining if a duty to defend exists, the court follows a two-part inquiry. First, it examines the coverage and defenses under the terms and requirements of the insurance policy. Second, it asks whether the allegations in the underlying suit "potentially bring the . . . claim within the policy's coverage." *St. Paul Fire & Mar. Ins. Co. v. Pryseski*, 292 Md. 187, 193 (1981). Here, the issue is whether the allegations in the *Sprint* suit potentially fall within the scope and limitations of coverage for "personal and advertising injury." *See Walk*, 382 Md. at 13.

As defined by the policies, "personal and advertising injury" includes injury "arising out of" "oral or written publication, in any manner, of material that slanders or libels a person or

organization or disparages a person's or organization's goods, products, or services." There is no allegation in the *Sprint* action that Linq published material that "disparages" Sprint – even if the court interprets the verb "disparage" broadly to mean "to speak of or treat slightingly" or "to depreciate by indirect means." (*See* Linq Mot. Partial Summ. J. Mem. Law 26–28, ECF No. 16-1) (urging court to interpret "disparage" broadly and suggesting various definitions). Despite Linq's assertions to the contrary, it is not enough for the *Sprint* action to claim that 1) Linq promotes its services on its website, and those services have the effect of damaging Sprint's reputation, or 2) Linq perpetrates a scheme that harms Sprint, and Linq co-conspirators made statements to advance that scheme. (*Id.* 19, 36–37). A mere allegation of reputational harm does not establish disparagement. *See All Class Const*, 3 F. Supp. 3d at 420–21; *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 265 (2014).

Linq's "implicit disparagement" claims are also unconvincing. According to Linq, for instance, the underlying complaint alleges that Linq falsely portrayed its phones as equivalent to those sold by Sprint, which implicitly disparaged Sprint. (Linq Mot. Partial Summ. J. Mem. Law 32–33). Some courts have found disparagement based on false equivalence where the insured allegedly made false or misleading statements claiming its products were equivalent to those of a competitor. *See JAR Labs. LLC v. Great Am. E & S Ins. Co.*, 945 F. Supp. 2d 937, 943–45 (N.D. Ill. 2013); *see also McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) ("A misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer."). But these cases tend to involve allegations that the insured explicitly compared its product to that of a competitor – precisely what is absent here. *See, e.g.*, *JAR Labs.*, 945 F. Supp. 2d at 943–45.

Linq also claims the underlying complaint alleges the publication of disparaging material because Linq phones are cheaper than those sold by Sprint – which will lead Sprint customers to conclude that Sprint is a price gouger. (Linq Mot. Partial Summ. J. Mem. Law 32–33). But this is not enough to establish the underlying complaint alleges the publication of disparaging material. *See Swift Distribution*, 326 P.3d at 264 ("Reducing the price of goods, without more, cannot constitute a disparagement"). Finally, the court cannot accept Linq's assertion that because the *Sprint* action alleges reputational harm, that "implies that statements not articulated in the complaint must have been made that were injurious to Sprint's reputation." (Linq. Mot. Partial Summ. J. Mem. Law 25). Speculation about what the defendant in the underlying suit might have done does not establish a duty to defend. *See Walk*, 382 Md. at 24.

In sum, the *Sprint* action does not allege the publication of disparaging material. Although Linq also claims a duty to defend exists because the complaint alleges the publication of defamatory material, (Linq Mot. Partial Summ. J. Mem. Law 39–42), these arguments largely mirror those offered in the context of disparagement, and they fail for similar reasons. The complaint does not allege Linq published material that defames Sprint.

B. *Request for Final Declaration on Duty to Indemnify*

In its cross motion for summary judgment, Ohio Security and Ohio Casualty further ask the court to find that, because there is no duty to defend in the underlying *Sprint* action, there is also no duty to indemnify. (Liberty Mutual Cross Mot. Summ. J. Mem. Law 30–31). This is the second time this issue has arisen before the court. Originally, Ohio Security and Ohio Casualty sought a declaratory judgment that neither had a duty to defend or indemnify after Linq moved for declaratory judgment on the duty to defend issue. (Liberty Mutual Answer & Countercls.,

ECF No. 11). Linq moved to dismiss the counterclaims for declaratory judgment by Ohio

Security, but not those filed by Ohio Casualty. (Linq Mot. to Dismiss Countercls., ECF No. 22).

With respect to the counterclaim by Ohio Security – the only one to which Linq objected – the

court stayed any decision on the duty to indemnify, finding that it was not necessary to decide

the issue during declaratory judgment proceedings. (Docket Entry No. 28).

The court has now found, through summary judgment briefing, that no duty to defend

exists in this case. That necessarily means that no duty to indemnify may exist, Ohio Security

and Ohio Casualty claim. (Liberty Mutual Reply 11–12). However, the court concludes it would

be premature to make any final ruling on the duty to indemnify issue. As the court has previously

suggested, there may be instances where a duty to indemnify exists absent a duty to defend. *See*

*Westfield Ins. Co. v. Nautilus Ins. Co.*, 154 F. Supp. 3d 259, 271–72 (M.D.N.C. 2016) ("While

the reasons that may negate an insurer's duty to defend may also negate an insurer's duty to

indemnify, the duty to defend does not subsume the duty to indemnify."). Accordingly, the court

will dismiss without prejudice all claims related to the duty to indemnify. If Linq desires to

pursue the duty to indemnify issue, it may do so once the underlying *Sprint* action concludes.

**CONCLUSION**

For the aforementioned reasons, the court will grant Ohio Security and Ohio Casualty's

motion for partial summary judgment on the duty to defend issue and will deny Linq's motion

for partial summary judgment on that same issue. The court will deny the request from Ohio

Security and Ohio Casualty to find no duty to indemnify exists, and will dismiss without

prejudice all claims related to the duty to indemnify. A separate order follows.


March 29, 2017                                          /S/
Date                                        Catherine C. Blake
                                            United States District Judge

9